SOUTHERN DISTRICT OF FLORIDA

CASE NO.  07-81000-CTV-DIMITROULEAS/ROSENBAUM

**HOWARD HOWELL** and
**KAREEN HOWELL,**

     Plaintiffs,

v.

**MATTHEW WOOD and JOHN
DOUGAN**

     Defendants.

_____/

PRETRIAL STIPULATION

## PRETRIAL STIPULATION

### 1. a. PLAINTIFFS' STATEMENT OF THE FACTS

Howard Howell, a Palm Beach County Sheriff's Deputy, has served in that position since April 27, 2003; he holds both a bachelor's degree in criminal justice and a master's degree in emergency management planning. His neighbors in Loxahatchee, County and Elaine Spence, planned a birthday party for their 16 year old son on Saturday, June 24, 2006; they asked Howell – who owned a sound system and who was off duty that day – if he would provide music for the party. Howell agreed and with the assistance of another deputy, Corporal Clinton Cohen, set up his sound system on the patio area in the rear of the Spence home. Earlier in the evening, the guests at the party consisted of adults and children; by 11 p.m., however, the party had started to wind down and only about 8-10 adults and two teenagers remained. These guests were largely professional people – including a bank officer – and, like Howell, were black.  As the party wound down, one of the adults who was to be married in a few days wanted to hear some music that might be played at his wedding; the music being played for him was characterized by those present as "oldies" rather than music attuned to the younger generation. At 11, Howell called another off-duty deputy, Ahmed Shahid, and invited him to come by for some of the food. Shahid, who lived nearby, arrived a few minutes later; Howell met him, and the two walked to the patio area; Shahid then stopped to speak to Corporal Cohen while Howell walked over to one of the speakers.

At 11:07 p.m., an anonymous complaint for loud music had been received by the sheriff's office; Deputies Mathew Wood and John Dougan responded in separate cars to 12483 68th Road, North Loxahatchee – the Spence home. Wood, a rookie patrolman, had been cleared to patrol by himself only 10 days before; Dougan, who had been with the sheriff's office about a

year, had a 17 yr. old explorer, Adam Avey, riding with him.  Corporal Cohen had served as a training officer for both deputies.

From the point in time when Deputies Wood and Dougan arrived at the Spence home - - just after Howell and Shahid had walked together to the back patio - - the accounts of what occurred given by these two deputies are at considerable variance from the accounts given by Howell, Cohen and the others present. Where the accounts are in conflict, the following presents those facts which are more favorable to the Plaintiffs.

Mr. Spence was standing at the side yard next to a gate in the fence when the two patrol cars pulled up and parked across the street. As the two deputies and the young explorer approached, they shone lights in his face, but otherwise ignored him. Both Spence and several of the guests have reported the manner of the deputies as "aggressive" at this point and "storming" onto the property. They stopped momentarily at a second gate where Mrs. Spence was standing and Dougan spoke with her. Mrs. Spence, who was friendly and cooperative, informed Dougan that she would turn down the music.  Wood and the explorer, Avey, continued past Mrs. Spence to the patio as Dougan spoke with her.

Howell, who was standing a few feet in front of Cohen and Shahid and near one of the speakers - - some 4-6 feet from the music control panel - - saw Wood approach, but pass by him; he assumed that Wood was going to talk to Cohen and Shahid who were standing a few feet behind Howell. By Dougan's own account, the standard procedure on noise complaints is simply to request the owner to have the music turned down; if the owner agrees, the matter is concluded at that point and the officers normally leave. Howell looked over his shoulder as Wood passed about 4 feet away; Wood did not ask Howell to turn down the music or otherwise speak to him. At that moment, he heard a noise and turned back around; it was Deputy Dougan, standing in his

face; Dougan shouted at him in an aggressive manner "you need to turn that fucking music off now".  Howell, taken aback by the sudden vehemence of Dougan's command, responded "you don't have to talk to me like that. I'm a fucking deputy just like you".  Howell made no verbal threat, nor did he present a physical threat or respond in any way that might be reasonably regarded as an aggressive act toward Dougan; he did not step toward Dougan or clinch his fist as Dougan and Wood would later claim. Before Howell completed the phrase "just like you", Dougan, who had drawn his canister of pepper spray, sprayed Howell a full blast of the pepper spray directly in his face. Howell, whose eyes were stinging and who had difficulty seeing and breathing, pulled up his shirt to wipe his face. Dougan then simply turned and began to walk away. One of the guests, who saw this, noted that Howell's cell phone was revealed under his shirt.  Wood conceded that as he approached the patio area he did not know that Howell was the person responsible for operating the equipment.   After Mrs. Spence assured Dougan that she would turn the music down and headed to the patio area to do so, Dougan had followed her. Corporal Cohen, who saw the mist of spray in the air, realized what Dougan had done; he advised Dougan that he had just maced a fellow deputy and instructed him that he should summon his supervisor. Mr. Spence, Cohen and several others assisted Howell into a bathroom to wash his face and irrigate his eyes. Wood and Dougan followed Cohen into the house and Wood asked him if he wanted them to summon the Emergency Medical Service; Howell declined. Cohen then instructed Wood and Dougan to return to their units and contact their supervisor. Dougan and Cohen proceeded to the patrol units; Wood initially followed, but then returned to the back patio area as did the young explorer.

After washing his eyes and face, Howell left the bathroom, using a wet towel to relieve the continuing irritation. His intention was to place a call to Captain Barnes, of the Sheriff's

Department, from his cell phone because he had little confidence in Sgt. Andrew Porath, the supervisor of Wood and Dougan; he also wanted to go out onto the patio area where there was a large fan which he thought might cool the burning sensation in his face and eyes.  As he came to the door to the patio, several people who had been assisting him walked with him; he pulled the cell phone from his waistband and commented, "this ain't over with". At that point, though his vision was still partially obscured, he heard a voice in front of him yell "gun". He heard Mr. Spence, who was next to him, respond: "there's no gun here".

Wood, who was standing on the patio about 5-10 feet from Howell as the latter came to the door, was the person who shouted "gun"; at that time he also drew his own gun and pointed it at Howell. Howell, who only had a cell phone in his hand, had no weapon and never drew or brandished a gun, nor had he made any threats to shoot or harm anyone as Wood would later claim. Indeed, all witnesses in the doorway and patio area - - including the explorer, Avey, who was just behind Wood - - gave sworn statements that evening in which they denied seeing Howell with a gun. According to Wood, Howell stood there for 5-10 seconds before he turned back into the room. Wood meanwhile holstered his weapon, turned and began to walk toward the patrol cars; he made no effort to stop or arrest Howell. He met Dougan and Cohen, who had sprinted toward the patio when they heard the word "gun" shouted by Wood and saw Wood draw his gun; Wood calmly remarked to them that he saw Howell pull a gun on him and threaten to kill Dougan. Although Dougan saw Wood draw his gun, and while Dougan drew his own when he heard Wood shout, he conceded that he never saw Howell with a gun - - though he did see him place something black in his waistband.

Dougan, Wood and Cohen returned to the police cruiser where Dougan finally placed a call for his supervisor as he had been instructed.  Within a few minutes, Sgt. Andrew Porath

arrived, followed by Lt. Richard Burdick and Captain Barkdoll, the duty captain, and a large number of other deputies including the violent crime unit. After Lt.

Burdick spoke with Dougan and Wood, he made the decision to arrest Howell based solely on Wood's statement regarding the alleged threat with a firearm. He had Howell handcuffed and placed in one of the vehicles.  The only officer present who spoke to Howell was Sgt. Jolly, an internal affairs investigator; although Howell informed Jolly that he had no weapon with him and that his weapons were all at his own home (he identified where each could be located) no-one made an effort to verify this. The Spence house was thereafter thoroughly searched by two teams of officers who found no weapon.  As he was arriving, Porath also received a call from Howell who had been unable to contact Captain Barnes (Captain Barkdoll, the on-duty captain, in his sworn statement advised that he had learned before he, too, proceeded to the scene that Howell had called dispatch attempting to reach Barnes) Howell's phone log reflects these calls. Sworn statements were taken of all the witnesses as to what had occurred that evening; they all essentially confirmed Howell's account. Captain Barkdoll, in view of the seriousness of the charge and the lack of corroborating evidence questioned Wood and asked him if was certain he saw Howell brandish a gun and whether he could have mistaken a phone for a gun; Wood continued, at this point, to insist that what he saw in Howell's hand was a gun and even described the make, color and size; he insisted that he could not have been mistaken. Meanwhile, a search of Howell's person after he was handcuffed disclosed that he was wearing a cell phone and no gun.

Howell was subsequently charged with aggravated assault with a deadly weapon upon a law enforcement officer; resisting an officer without violence and a noise ordinance infraction.

The State Attorney, after investigating the charges files a notice of no-filing, dropping the charge.

## 1.  b.   DEFENDANTS' STATEMENT OF THE FACTS

On June 24, 2006, two officers, Dougan and Wood go to an address regarding a complaint of loud music.  They arrive in separate cars, and Dougan is accompanied by a young explorer-cadet, Adam Avey.  As they arrive, they can hear the music from about a block away.  When they arrive, they are met at a side gate by one of the owners of the house, Mrs. Spence.  Dougan engages her in conversation.  The explorer stands near them, while Wood, standing at the side gate, can see a person, later identified as Howell, at the sound system.  Wood goes through the gate to ask Howell to turn the music down.  Once there, he attempts to engage Howell in conversation.  Mr. Howell, who is also a deputy sheriff, lives next door. There is a party in progress. The exact nature of the conversation is in dispute, but within a few moments Dougan arrives at the sound system area, observes the conversation, and concludes from his observation that there is a realistic potential for physical confrontation between Wood and Howell. At this point Dougan is unaware that Howell is a deputy sheriff. Dougan decides to pepper spray Howell to thwart the perceived physical confrontation.  Dougan uses his pepper spray just once—a brief stream to try to control the situation.  Pepper spray is not lethal, usually does not (and here did not) cause lasting physical problems and the person sprayed recovers completely (at least in this case) within a few minutes of being sprayed.  Howell needed no medical attention for having been sprayed, refused the offer of calling the paramedics, and did not complain of physical problems upon being booked into the jail.

After being sprayed, Howell was immediately escorted into the house by other partygoers, and a Corporal Cohen, also a partygoer, appears.  As it happens, Corporal Cohen was

the field-training officer for both Dougan and Wood, who are both relatively new deputies. (Although neither is new to law enforcement.)   Corporal Cohen engages Dougan in conversation, and Wood goes into the house to see if Howell needs medical attention. After Howell indicates he does not need such attention, Wood comes out of the house, observes Dougan and Cohen in conversation and turns to walk over to them. At this point, Howell comes out of the house, apparently upset, and speaking in a loud voice.   What exactly he says is in dispute, but he at least says words to the effect that "this isn't over."   He is accompanied by several partygoers.   He has something in his hand.   He and the other partygoers say it's a cell phone, Wood says it's a gun. He gestures in the direction of Dougan, and Wood with the hand holding the object. Upon seeing Howell acting in this manner, Wood pulls his service weapon, and shouts "gun." He does not shoot.   Howell admits that he heard "gun" at one point in his deposition, and "drop the gun" at another point in his deposition. The other partygoers get ahold of Howell and take him back inside.   Wood holsters his weapon.   Cohen tells Wood and Dougan to go back to their cars, and call a supervisor.

A supervisor, Sgt. Andrew Porath, also a defendant in this action, arrives about 15 minutes later. Also arriving at the scene, after Porath, was Lt. Richard Burdick, the watch commander on duty.   Because the incident involved an off duty deputy, the Internal Affairs unit was notified, and Defendant Mark Jolly arrived. In addition, Captain Bruce Barkdoll, the command duty officer, arrived.

After arriving, Lt. Burdick spoke with Deputy Wood, and after observing his demeanor and hearing what he had to say, made the decision to arrest Howell for aggravated assault. (Wood told Burdick, as well as several others, that Howell had pointed a gun at him and made threatening remarks about Dougan.  Wood was "positive" that Howell had pointed a gun at him.)

Lt. Burdick along with Sgt. Porath, took Howell into custody.  Howell was transported to the jail by Deputy Wood.

During the ensuing criminal investigation, the violent crimes unit arrived, in the person of Sgt. McAfee, and three detectives, Karpinski, Prieschl, and Rifflard. The three detectives took recorded statements from ten partygoers, including Cpl. Cohen and Agent Shahid (yet another partygoer,) both sworn deputy sheriffs. The officers obtained consent to search the house from the owners, Mr. and Mrs. Spence.  No gun was found during the search.

After his arrest, Howell was put in the back of Wood's patrol car, and subsequently taken to the Palm Beach County Jail. While the criminal investigation was proceeding, I.A. investigator Mark Jolly went from the scene to the jail to speak with Howell.  While at the jail, Jolly, believing that Howard was under the influence, ordered Howell to submit to a blood alcohol test which revealed that the contents of Howell's blood at 5:30 a.m. contained 0.04% alcohol.   The toxicology manager, Tate Yeatman, using common investigating techniques, extrapolated the reading at 5:30 a.m. to mean that Howell's blood alcohol reading at 11:30 p.m. the night before (the time of the incident) was 0.136%. (More than 1.5 times the amount to be proved to be DUI.)

2.  **BASIS OF FEDERAL JURISDICTION:**  This court has jurisdiction pursuant to 42 USC 1331, 1343 and supplemental jurisdiction pursuant to 42 usc 137.

3.  **PLEADINGS RAISING THE ISSUES:**  Sworn complaint for damages, answer and affirmative defenses.

4.  **PENDING MOTIONS**: none

5.  **UNDISPUTED FACTS:** Plaintiff Howell was a deputy sheriff on June 24, 2006.  He was at a party hosted by the Spences. He was playing music though his sound system. Deputies Wood and Dougan arrived along with a police explorer, one Avey, shortly after 11:00 p.m. Wood and Dougan were investigating a complaint of excessive noise.  Upon arrival, Dougan

had some conversation with Mrs. Spence.  Wood went on the back deck where he encountered Howell.  While what happened after that is controverted, it is uncontroverted that eventually Howell was sprayed with pepper spray by Dougan.  After the passage of some time, Wood claims that he saw Howell with a gun.  Sometime after that, supervisors arrived. Sometime after that Howell was arrested.

6.   **ISSUES OF FACT WHICH REMAIN TO BE LITIGATED**:

a.  Did Dugan intentionally violate the civil rights of Howell by using excessive force by use of pepper spray.

b.  Did Dugan commit a battery against Howell by using pepper spray?

c.  Did Wood cause the false arrest of Howell by claiming that Howell pointed a gun at Wood, knowing that Howell had not pointed a gun at Wood.

d.  Did Wood intentionally violate the civil rights of Howell by claiming that Howell pointed a gun at Wood, knowing that Howell had not pointed a gun at Wood, which claim caused Howell's arrest?

e. Damages  resulting from the use of the pepper spray.

   1.  Physical and emotional damages

f.   Damages resulting from the false arrest.

   1.  Emotional damages

      1.  Loss of reputation damages

      2.  Loss of overtime income

      g.  Is the Sheriff vicariously responsible for the state claim of false arrest of Howell?

7.  **ISSUES OF LAW ON WHICH THERE IS AGREEMENT:** Venue and jurisdiction are proper. Liability issues of law set forth in the 11th circuit pattern jury instructions, and standard state instructions.

9.  **EXHIBITS:**    Plaintiff's schedule of exhibits with objections are attached as exhibit a.  Defendant's schedule of exhibits with objections are attached as exhibit b.

10. **WITNESSES:** Plaintiff's list of witnesses is attached as exhibit c. Defendant's list of witnesses is attached as exhibit d.

11.  **TIME FOR TRIAL:** Estimated trial time is 4 to 5 days.

12. **COSTS:** Plaintiff's estimate their attorney's fees at $250,000. Defense estimates attorney's fees at $100,000.

DATED THIS 31st day of December 2009.

/s/ Robert L. Saylor                              /s/Fred H. Gelston

_____                    _____

Robert L. Saylor, Esq.                            Fred H. Gelston, Esq.

Law Office of Robert L. Saylor, P.A.           Fred H. Gelston, P.A.

1615 Forum Place,Suite 1-B                     601 N. Dixie Hwy., Ste. C

West Palm Beach, Fl 33401                      West Palm Beach, FL 33401

560-696-8700                                         561-832-5999

561-697-3135 fax                                   561-832-2533 fax

561-531-2680 cell                                  fgelston@bellsouth.net

saylorlaw@gmail.com

**Plaintiff's LIST OF EXHIBITS**

1. Cell Phone  No Objection

2. Photographs of the Spence residence    No Objection

3. Cell phone records from the night of the incident No Objection

4. Dr. LaPointe's report  Subject to Cross Examination of Dr. LaPointe

5. State Attorneys "No File of Case"  r, m,

6. Howard Howell's personnel file  r, m

7.  Palm Beach Post articles  h

8.  Bad Cops.com postings r,m,h

9.  LEOAffairs.com postings r,m,h

10. Probable Cause Affidavit r,m

Exhibit A

Defendants' Exhibit List

1.    IA Report Case #06-037   h, r, m

2.    PBSO Incident Report #06-081854 r,m,

3.    Probable Cause Affidavit (05-081854) r,m,

4.    Written Statement by Explorer Adam Avey  r,m

5.      Handwritten diagram (5)

6.      Toxicology report subject to cross examination of toxicologist

7.      State Attorney's Office NO FILE letter

8.      Typed transcript of interview of Capt. Bruce Barkdoll

9.      PBSO General Order 300.00 (Drug/Alcohol Testing)

**10.     Cell phone of plaintiff at the time of the incident.**

**11.     Plaintiff's Glock 27 and Glock 22 demonstrative exhibits only**

12.     Any exhibits listed by the plaintiff.

Exhibit B

**Plaintiff's LIST OF WITNESSES**

**All of these witnesses are likely to be called**

Deputy Clinton R. Cohen

3228 Gun Club Road

West Palm Beach, FL  33406

(business address is the same)

Business: (561) 688-3000


Mr. Deon Wedderburn

958 Pipers Cay

West Palm Beach, FL  33415

Home: (561) 471-8633 (With new address – unsure whether phone # is correct)

Cell: (561) 876-8264


Mr. Rohan W. Mullings

123 Country Club Way

Royal Palm Beach, FL  33411

Home: (561) 204-1158


Ms. Elaine V. Spence

12483 N. 68 Street

West Palm Beach, FL  33412

Home: (561) 204-4425

Business: (561) 856-7534


Ms. Courtney F. Spence

12483 N. 68 Street

West Palm Beach, FL  33412

Home: (561) 241-4425

Mr. Franklin L. Sybliss

16473 N. 92 Lane

Loxahatchee, FL  33470

Home: (561) 795-3511

Business: (561) 676-5324

Deputy Ahmed Shahid

3228 Gun Club Road

West Palm Beach, FL  33406

Business: (561) 688-3000

**Home Address:**

15365 60th Place North

Loxahatchee, FL  33470

Cell:  (561) 723-5546

Mr. Ian Hewling

1372 Amaryllis Lane

West Palm Beach, FL  33415

Home: (561) 615-3792

Business – Cell: (561) 301-3580

Ms. Tonica Chappell

123 Country Club Way

Royal Palm Beach, FL  33411

Home: (561) 951-2247


Mr. Jerome N. Sheriffe

914 63rd Street West

Bradenton, FL  34209

Cell: (561) 662-1436


Detective Christopher Karpinski   by depo

3228 Gun Club Road

West Palm Beach, FL  33406

Business: (561) 688-3000


Cameron Howell

12439 68th Street N

West Palm Beach, FL 33412


Howard Howell

12439 68th Street N

West Palm Beach, FL 33412


Kareen Howell

12439 68th Street N

West Palm Beach, FL 33412


Deputy Tim Daley

3228 Gun Club Road

West Palm Beach, FL  33406

Business: (561) 688-3000


Capt. Bruce Barkdull  by depo

3228 Gun Club Road

West Palm Beach, FL  33406

Business: (561) 688-3000


Sgt. Thomas Euell

3228 Gun Club Road

West Palm Beach, FL  33406

Business: (561) 688-3000


Mark Jolly    by depo

3228 Gun Club Road

West Palm Beach, FL  33406

Business: (561) 688-3000


Andrew Porath  by depo

3228 Gun Club Road

West Palm Beach, FL  33406

Business: (561) 688-3000

Exhibit C

Defendants' Witness List

1.      Howard Howell, Plaintiff

2.      Kareen Howell, Plaintiff

3.      Deputy Sheriff Matthew Wood, Defendant

4.      Deputy Sheriff John Dougan, Defendant


5.      Corporal Clinton Cohen

        Palm Beach County Sheriff's Office

        3228 Gun Club Road

        West Palm Beach, FL 33406

        688-3000


6.      Agent Ahmed Shahid

        Palm Beach County Sheriff's Office

        3228 Gun Club Road

        West Palm Beach, FL 33406

        688-3000


7.      Explorer Adam Avey

        Palm Beach County Sheriff's Office

        3228 Gun Club Road

        West Palm Beach, FL 33406

        688-3000


8.      Mrs. Elaine Spence

        12483 68th Rd., N.

        West Palm Beach, Fl 33412


9.      Mr. Courtney Spence

        12483 68th Rd. N.

West Palm Beach, FL 33412

10.    Mr. Franklin Sybliss

16473 N 92 Lane

Loxahatchee, FL 33470

561-795-3511 or 676-5324

11.    Ian Hewling

1372 Amaryllis Lane

West Palm Beach, Fl 33415

561-615-3792

12.    Tonica Chappell

123 Country Cl. Wy

Royal Palm Beach, FL 33411

561-204-1158 or 561-951-2247

13.    Jerome Sheriffe

4608 Schall Road, Apt. C

West Palm Beach, FL 33407

561-662-1436

14.    Deon Wedderburn

832   Hill Dr., Apt. B

West Palm Beach, FL 33415

561-471-8633

11.     Rohan W. Mullings

        123 Country CL Wy

        Royal Palm Beach, Fl 33411

        561-204-1158


12.     Sgt. Andrew Porath

        Palm Beach County Sheriff's Office

        3228 Gun Club Road

        West Palm Beach, FL 33406

        688-3000


17.     Captain Bruce Barkdull, Command Duty Officer

        Palm Beach County Sheriff's Office

        3228 Gun Club Road

        West Palm Beach, FL 33406

        688-3000


18.  Lt.  Richard Burdick, Watch Commander

        Palm Beach County Sheriff's Office

        3228 Gun Club Road

        West Palm Beach, FL 33406

        688-3000


19.  Stacey Lawhorn (took the blood from the plaintiff)

        Palm Beach County Sheriff's Office

        3228 Gun Club Road

West Palm Beach, FL 33406

688-3000


20.  Dustin Tate Yeatman, Toxicology Manager

Palm Beach County Sheriff's Office

3228 Gun Club Road

West Palm Beach, FL 33406

688-3000

21.  All witness listed by Plaintiff


Exhibit D